UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62181-GAYLES

**MICHAEL GEORGE FORREST,**
       Plaintiff,

v.

**ANTHONY PUSTIZZI, A. PLESHER,
and V. JONES,**
       Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on motions to dismiss filed by Defendants Anthony Pustizzi, Chief of Police of the City of Coral Springs Police Department [ECF No. 14], and City of Coral Springs Police Officers V. Jones [ECF No. 17] and A. Plesher [ECF No. 18]. The Court has carefully considered the parties' briefs, the Plaintiff's Complaint, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, Chief Pustizzi's and Officer Jones's motions to dismiss shall both be granted, and Officer Plesher's motion to dismiss shall be granted in part and denied in part.

### I. BACKGROUND

According to the allegations in the Complaint, on the evening of January 17, 2016, Plaintiff Michael George Forrest was in his home in Coral Springs, Florida, watching a movie with his girlfriend Angela and his cousin Faye. Compl. ¶ 12. At just after 9:00 p.m., Forrest heard a loud knock at the front door. *Id.* ¶ 13. The group was not expecting any other visitors that evening, so Forrest went downstairs to the front door and looked through the peephole, but he did not see anyone. *Id.* ¶¶ 14-15. In an abundance of caution, Forrest drew his legally permitted gun from its holster and concealed it behind his back, so as to not expose it to anyone when he opened the door. *Id.* ¶ 16.

When he opened the door, Forrest saw Officer Jones close to the corner next to the garage, and Officer Plesher coming from behind the door to confront him. *Id.* ¶ 17. Officer Jones asked if any women were inside the house. *Id.* ¶ 19. When Forrest replied in the affirmative, Officer Jones advised him that she and Officer Plesher were investigating a possible domestic violence complaint in the area and stated that a woman was heard crying out for help. *Id.* ¶¶ 19-20. Forrest told the Officers that they had come to the wrong house, but the Officers asked to confirm that both women in the house were not victims of domestic violence. *Id.* ¶¶ 21-22. Officer Plesher then forced the front door open and stood in the doorway. *Id.* ¶ 23. Forrest feared returning his gun to its holster out of fear that the Officers would misunderstand why he was holding it, so he continued to hold the gun behind his back during the parties' discussion. *Id.* ¶¶ 24-25.

Forrest called to Angela and Faye to come downstairs, but to do so, he had to turn around and call up the stairs, which revealed his gun to the Officers. *Id.* ¶ 26. He next heard both Officers yelling at him to "drop the [expletive] gun," and he immediately started to turn around to place the gun down on the stairs so it would be plainly visible. *Id.* ¶ 27. Before Forrest could tell the Officers that the gun was on the stairs, Officer Plesher punched him in the face, breaking his nose. *Id.* ¶ 28. By then, Angela and Faye had appeared at the top of the stairs, and Officer Jones pointed her gun at them, telling them repeatedly to "stay the [expletive] upstairs and don't move." *Id.* ¶ 29. Officer Plesher repeatedly punched Forrest in the head, grabbed Forrest's hair as he forced him to the ground onto his stomach, kicked Forrest in the back, and placed his feet in the center of Forrest's back while saying "Give me your [expletive] hands. I told you how many [expletive] times to drop the gun and get the [expletive] down on your stomach." *Id.* ¶¶ 30, 32. Forrest remained passive throughout. *Id.* ¶ 31. He told the Officers he was within his rights in his own home and had done nothing wrong, and he asked Officer Plesher why he was beating him but Officer Plesher, rather than answering, continued to punch and kick him. *Id.* ¶¶ 33-34.

Forrest was eventually lifted from the floor in handcuffs. *Id.* ¶ 35. He tried to explain that the Officers had the wrong house, but the Officers did not check any other homes in the area, nor did they check on Angela or Faye. *Id.* ¶¶ 36-37. When Forrest asked why he was being arrested, the Officers replied, "You did not obey the command." *Id.* ¶ 39. Because of his injuries, Forrest was taken to be treated at Broward Health Coral Springs, and he was then remanded to the custody of the Broward County Sheriff's Office. *Id.* ¶ 43. Forrest was admitted into the Broward Main Jail and charged with a violation of Fla. Stat. § 843.02 (resisting an officer—obstruction without violence) by the Broward County Sheriff's Office. *Id.* ¶ 44. He continued to experience pain as a result of the injuries inflicted by Officer Plesher but he was never provided with pain medication. *Id.* ¶¶ 45, 48. He was forced to endure booking and processing, arraignment, and imprisonment. *Id.* ¶ 46. He was forced to seek bail and retain counsel, and all charges against him were eventually dropped. *Id.* ¶¶ 47, 49-50.

Forrest filed this action on September 13, 2016, and he brings the following claims: false arrest and/or false imprisonment in violation of the Fourth Amendment to the U.S. Constitution and under 42 U.S.C. § 1983 against Officer Jones (Count I), Officer Plesher (Count II), and Chief Pustizzi (Count III);[1] excessive force in violation of the Fourth Amendment and under 42 U.S.C. § 1983 against Officer Plesher (Count IV) and Chief Pustizzi (Count V); state law negligent training and supervision against Chief Pustizzi (Count VI); state law battery against Officer Plesher (Count VII) and Chief Pustizzi (Count VIII); and state law intentional infliction of emotional distress against Officer Plesher (Count IX) and Officer Jones (Count X). Each Defendant has moved to dismiss all claims against him or her.

---

[1] The claims against Chief Pustizzi are brought against him "in his official capacity as Chief of Police of the City of Coral Springs." Compl. at 1; *see also* Pl.'s Pustizzi Opp'n at 10, 11.

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III. DISCUSSION

### A. *Federal Claims against the Officers*

Officer Jones and Officer Plesher have moved to dismiss all federal claims against them on the basis of qualified immunity. "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted).

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017)

(quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). An official who asserts an entitlement to qualified immunity must first establish that he or she was acting within the scope of his or her discretionary authority when the allegedly wrongful act occurred. *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016); *see also Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015) ("[T]he term 'discretionary authority' include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (citation and internal quotation marks omitted)). It is not disputed that Officers Jones and Plesher were both acting within their discretionary authority at the time of Forrest's arrest.

With discretionary authority established, "the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." *Id.* To make that determination, the Court undergoes a two-pronged inquiry. First, the Court asks "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show [that] the officer's conduct violated a [federal] right." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (first and third alterations in original) (quoting *Tolan v. Cotton*, 572 U.S. —, —, 134 S. Ct. 1861, 1865 (2014) (per curiam)). Second, the Court asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Tolan*, 135 S. Ct. at 1866). "'[C]learly established law' should not be defined 'at a high level of generality,'" *White v. Pauly*, 580 U.S. —, —, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), and "must be 'particularized' to the facts of the case," *id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1. False Arrest (Counts I and II)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is a seizure of the person, and courts assess the reasonableness of an arrest by determining

5

the presence or absence of probable cause for the arrest. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Probable cause to arrest exists if "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citations and internal quotation marks omitted). That said, "[e]ven if an officer has effected an arrest without probable cause (and without a warrant), he will still be entitled to qualified immunity if the arrest was supported by ***arguable*** probable cause." *Fish v. Brown*, 838 F.3d 1153, 1165 (11th Cir. 2016). To determine whether arguable probable cause exists, the Court must decide whether "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] ***could*** have believed that probable cause existed to arrest [the plaintiff]," *Morris v. Town of Lexington*, 748 F.3d 1316, 1324 (11th Cir. 2014) (emphasis added) (citation and internal quotation marks omitted), a determination which "naturally depends on the elements of the alleged crime and the operative fact pattern," *Skop*, 485 F.3d at 1137-38. Arguable probable cause does not exist if it is "clear that the conduct in question does not rise to the level of a crime, under the facts known at the time." *Wilkerson v. Seymour*, 736 F.3d 974, 976 (11th Cir. 2013). Where an officer arrests without arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures. *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).

Officers Jones and Plesher arrested Forrest for a violation of Fla. Stat. § 843.02—Resisting officer without violence to his or her person. The statute provides, in relevant part: "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ." Fla. Stat. § 843.02. The elements of the crime of resisting an officer without violence

6

are: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1186 (Fla. 2009). This statute "is intended to apply when a person willfully interferes with an officer's lawful activities," although inaction can also constitute the requisite interference. *J.M. v. State*, 960 So. 2d 813, 816 (Fla. 3d DCA 2007); *see also C.E.L. v. State*, 995 So. 2d 558, 563 (Fla. 2d DCA 2008) (holding broadly that "a knowing defiance of a lawful police order" is within the scope of section 843.02), *aff'd*, 24 So. 3d 1181. Refusal to comply with an order to surrender a firearm can give rise to a violation of this statute. *E.g.*, *Light v. State*, 796 So. 2d 610, 613 (Fla. 2d DCA 2001).

Based on the facts alleged in the Complaint, the Officers went to Forrest's home because of a potential domestic violence incident in the area around Forrest's home. Compl. ¶ 20. The Officers were dressed in police uniforms and informed Forrest as to their investigation and that a woman had been heard crying out for help. *Id.* ¶¶ 18, 20. They were told by Forrest that there were two women in the house. *Id.* ¶ 22. The Officers sought confirmation that both women were not victims of domestic violence. *Id.* When Forrest turned away from them to call the women downstairs, the Officers learned, for the first time, that Forrest had been holding a gun behind his back. *Id.* ¶ 26. The Officers then demanded that Forrest drop the gun, *id.* ¶ 27, which the Court finds is an objectively reasonable command, given the circumstances and potential for danger. In making this command, the Officers were engaged in the execution of a legal duty. Despite this lawful command, Forrest did not immediately surrender the gun. Rather, he turned to put the gun on the stairs.[2] A reasonable officer under these circumstances, possessing the knowledge that Officer Jones and Officer Plesher possessed at the time, ***could*** believe that probable cause existed to arrest Forrest for resisting an officer without violence. That Forrest alleges that he intended to place the gun on

---

[2] The distance from the door to the stairs is not apparent from the face of the Complaint.

the stairs is immaterial; all that is critical is the ***Officers'*** knowledge at the time and whether that knowledge gave the Officers arguable probable cause to arrest.

Forrest's reliance on *Petithomme v. County of Miami-Dade*, 511 F. App'x 966 (11th Cir. 2013) (per curiam), a nonprecedential Eleventh Circuit decision, is misplaced. There, police officers, during a valid investigatory stop, demanded the plaintiff produce the identification for her vehicle. The plaintiff alleged that she asked the officers if she could go into her home to retrieve the identification. The court found that the officers did not have arguable probable cause to arrest the plaintiff for resisting an officer without violence because the allegations indicated that the plaintiff did not refuse to provide the identification, but instead attempted to comply with the officers' request. *See id.* at 971 ("[A] reasonable officer could not have concluded that [the p]laintiff was acting to or was attempting to 'resist, obstruct or oppose' the [o]fficers from viewing her identification merely because, while in the process of searching, she could not locate the identification for the vehicle as quickly as the [o]fficers would have liked.").

Integral to the court's conclusion in *Petithomme* was that the plaintiff did everything in her power to comply with the officers' request as soon as it was made. The plaintiff was sitting in her car when the investigatory stop began. Because she believed her identification was inside her home, she asked to go inside to search for it. Forrest, by contrast, had the ability to immediately surrender his gun when Officer Jones and Officer Plesher demanded he do so by simply dropping it or placing it on the floor.[3] Notably, Forrest does not allege that he immediately complied with the Officers' command to drop the gun. Rather, he asserts that he "immediately ***began to turn around and place the gun down on the stairs***." Compl. ¶ 27 (emphasis added). His failure to immediately

---

[3] It cannot be understated that *Petithomme* involved a mere request for identification; it did not involve a firearm. *See Florida v. J.L.*, 529 U.S. 266, 272 (2000) ("Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions."); *United States v. Gibson*, 64 F.3d 617, 624 (11th Cir. 1995) ("Law enforcement officers are at greatest risk when dealing with potentially armed individuals because they are the first to confront this perilous and unpredictable situation.").

8

comply with the Officers' commands is further revealed by the allegation that Officer Plesher later stated, "I told you how many [expletive] times to drop the gun and get the [expletive] down on your stomach," and that one of the Officers also stated, "You did not obey the command," in response to Forrest's inquiring why the Officers were arresting him. *Id.* ¶¶ 32, 39. Given that the Officers instructed Forrest to surrender a firearm, the existence of which Forrest had concealed from them for the majority of the encounter, the Officers reasonably were not required to wait any length of time for Forrest to comply with their command. *See Hayden v. Broward County*, No. 12-62278, 2014 WL 1877405, at *7-8 (S.D. Fla. May 9, 2014) ("[C]ontrary to [the p]laintiff's assertion that he immediately complied with the officers' request to turn over his firearm, [the p]laintiff admits that he first grabbed his camera case before releasing the snap of the belt of his fanny pack. This delay, coupled with the fact that [the p]laintiff was uncooperative and armed, sufficiently supports the existence of probable cause."). As such, the Court finds that Officer Jones and Officer Plesher had arguable probable cause to arrest Forrest for violating section 843.02 and are, therefore, entitled to qualified immunity on the false arrest claims. The motions to dismiss these claims are granted.

### 2. Excessive Force (Count IV)

The Court now turns to Officer Plesher's argument that he is entitled to qualified immunity on Forrest's excessive force claim against him. As the Eleventh Circuit recently explained:

> "A genuine 'excessive force' claim relates to the ***manner in which an arrest was carried out***, independent of whether law enforcement had the power to arrest." *Hadley*, 526 F.3d at 1329 (citing *Bashir v. Rockdale County*, 45 F.3d 1323, 1332 (11th Cir. 2006)) (emphasis added). Courts must examine "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily [or psychological] harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)). Consequently, "the words of a federal statute or federal constitutional provision may be ***so clear*** and the conduct ***so bad*** that ***case law is not needed to establish that the conduct cannot be lawful***." *Vinyard*

9

> [*v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)] (emphasis added). . . .
>
> "It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (citing cases). "In order for there to be a violation of the Fourth Amendment because of the use of excessive force, it must have been applied ***during the course of the seizure and not at some other time***." *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (emphasis added).

*Stephens*, 852 F.3d at 1318, 1320 (citations altered).

While "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham v. Connor*, 490 U.S. 386, 396 (1989), "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," *Hadley*, 526 F.3d at 1330. The Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and not obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (citing *Priester v. City of Rivera Beach*, 208 F.3d 919, 927 (11th Cir. 2000); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *Lee*, 284 F.3d at 1198). In *Saunders*, after the plaintiff was handcuffed, he was held down against the hot pavement on his stomach for a long period of time, even though he was not resisting, posing a threat, or attempting to flee. He told the agents that he was getting burned and held his face up off the pavement to prevent the burn to his face. One of the agents slammed the plaintiff's face onto the pavement. The district court, in dismissing the plaintiff's Section 1983 claims on qualified immunity grounds, reasoned that because the plaintiff had lifted his head off of the pavement, a reasonable officer in the agents' position could have believed that the use of force to return his head to the pavement was lawful on the basis that the plaintiff was refusing to cooperate or resisting arrest when he lifted his head from the pavement. The Eleventh Circuit reversed, finding that the force used by the officers against the plaintiff was gratuitous. *Saunders*, 766 F.3d at 1266.

Accepting Forrest's allegations as true, Forrest did not resist the Officers and obeyed the

Officers' commands. Yet Officer Plesher punched Forrest in the face, repeatedly punched him in the head, kicked him in the back, and placed his feet in the center of his back—all while Forrest told the Officers he was in his own home and had done nothing wrong and asked Officer Plesher why he was beating him. Forrest alleges that he sustained a broken nose, a concussion, headaches, lacerations, and scarring to his shoulder as a result of Officer Plesher's conduct. Compl. ¶ 51; *see also Stephens*, 852 F.3d at 1325 ("The nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." (emphasis omitted)). The right of a nonresistant, obedient plaintiff who is under control to be free from excessive force was clearly established by, at the very latest, the date of the ruling in *Saunders* (September 8, 2014), nearly a year and a half before the incident in this case. While it *may* be true—without deciding so—that, under the circumstances, a reasonable officer would have the right to exert the ***initial*** force against Forrest, the Complaint's allegations, read in the light most favorable to Forrest, certainly reveal that all subsequent instances of force against Forrest were gratuitous, especially those exerted on Forrest once he was on the ground asking why Officer Plesher was beating him.[4] The determination of whether the nature and extent of the injuries were

---

[4] Even without *Saunders* and the cases on which it relies, Forrest's allegations could also be considered "obvious clarity" facts, under which "no particularized preexisting case law [is] necessary for it to be clearly established that what [Officer Plesher] did violated [Forrest's] constitutional right to be free from the excessive use of force in his arrest." *Id.* at 1328 (quoting *Priester*, 208 F.3d at 927). "[G]eneral statements of the law," such as the statement from *Davis* (cited in *Stephens*) that the use of excessive force in carrying out an arrest is a violation of the Fourth Amendment, "are not inherently *in*capable of giving fair and clear warning to officers," *White*, 137 S. Ct. at 552 (emphasis added) (citations and internal quotation marks omitted), and "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful,'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (quoting *Anderson*, 483 U.S. at 640). "To find that a broad principle of law clearly establishes the law as to a specific set of facts, 'it must do so "with obvious clarity" to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (en banc) (quoting *Vinyard*, 311 F.3d at 1351). That being said, "obvious clarity" cases are "exceptional" cases "in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment." *Rodriguez v. Farrell*, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002); *see also al-Kidd*, 563 U.S. at 741 ("'The contours of the right must be sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed

excessive is an exercise better left for summary judgment or for a jury. At this time, the Court need only conclude that Officer Plesher is not entitled to qualified immunity on the excessive force claim. Accordingly, his motion to dismiss this claim is denied.

### B. *State Law Claims against the Officers*

Officer Jones and Officer Plesher both move to dismiss Forrest's state tort claims against them on the ground that they are entitled to individual statutory immunity. Florida's sovereign immunity statute shields police officers from personal liability in tort for injuries or damages they cause while acting within the scope of their employment, provided the officer does not "act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." Fla. Stat. § 768.28(9)(a). Thus, to pierce the statutory immunity defense, a plaintiff "must make a good faith allegation in the complaint that the public official either acted outside the scope of his employment or in bad faith." *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. 3d DCA 2007).

To establish bad faith, the plaintiff must allege facts demonstrating that the officer acted with "ill will, hatred, spite, [or] an evil intent." *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002) (citation omitted). To establish willful and wanton conduct, the plaintiff must allege facts that the officer "knew, or reasonably should have known . . . , that his [or her] conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade County*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015) (citation omitted). Facts alleging the violation of constitutional rights by a police officer do not, on their own, demonstrate bad faith, malicious purpose, or wanton and willful conduct. *See Moore v. Seminole County*, No. 13-0224, 2014 WL 4278744, at *6 (M.D. Fla. Aug. 29, 2014), *aff'd sub nom. Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2014 (2016).

---

the statutory or constitutional question beyond debate." (quoting *Anderson*, 483 U.S. at 640) (alterations removed)).

1. **Battery (Count VII)**

In the Complaint's allegations as to the battery claim against Officer Plesher, Forrest alleges that "[a]t all times relevant herein, [Officer] Plesher acted within the scope of [his] employment with [the Police Department]." Compl. ¶ 111. In his opposition brief, however, he concedes (presumably in an effort to circumvent statutory immunity) that "the allegation within the cause of action for battery that Officer Plesher's actions were within the scope of his employment appears to be at odds with s. 768.28(9)" and requests leave to amend his complaint to remove that allegation. Pl.'s Jones/Plesher Opp'n at 13. Such an amendment would be futile, however, because the Florida Supreme Court has found that an officer who uses excessive force during the course of an arrest is acting within the scope of his or her employment as a law enforcement officer. *See McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996). Therefore, Forrest's battery claim against Officer Plesher survives only if he plausibly alleged facts that demonstrate bad faith, malicious purpose, or wanton and willful conduct.

He has done so. Viewing the allegations in the light most favorable to Forrest, the Court can reasonably infer that Officer Plesher's actions in beating Forrest were done in a manner exhibiting wanton and willful disregard of Forrest's rights and safety, given that Forrest posed no immediate threat or offered any resistance to either Officer's commands (other than not immediately surrendering his firearm). Officer Plesher is not entitled to statutory immunity on Forrest's battery claim.

As a result, the Court must analyze the substance of Forrest's allegations. Given that "the elements and defenses of a battery claim against a law enforcement officer under Florida law are the same as those of an excessive force claim under the Fourth Amendment," *DaSilva v. Lamberti*, No. 08-62106, 2010 WL 680925, at *1 (S.D. Fla. Feb. 24, 2010), the Court's conclusion on the federal excessive force claim, *supra*, also leads the Court to conclude that Forrest has plausibly

13

stated a claim for state law battery against Officer Plesher. Accordingly, Officer Plesher's motion to dismiss the battery claim is denied.

### 2. Intentional Infliction of Emotional Distress (Counts IX and X)

To prevail at this stage on his intentional infliction of emotional distress claims, Forrest must sufficiently allege facts to plausibly show (1) each Officer's conduct was intentional or reckless, that is, he or she intended his or her behavior when he or she knew or should have known that emotional distress would likely result; (2) each Officer's conduct was extreme and outrageous; (3) each Officer's conduct caused emotional distress to him; and (4) his emotional distress was severe. *Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. 4th DCA 2009). If Forrest can state a substantive claim against the Officers, he can also withstand the Officers' statutory immunity challenge, as Florida courts have long held that the "reckless conduct" element of an intentional infliction of emotional distress claim "would at least constitute willful and wanton conduct" under section 768.28(9)(a). *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993).

To qualify as "extreme and outrageous," a defendant's conduct must have "been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985). "The standard for outrageous conduct is particularly high in Florida." *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998) (citations and internal quotation marks omitted). "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* Whether allegations rise to the required level of outrageous conduct is a question of law to be determined by the Court. *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990).

"In cases where Florida courts have permitted a plaintiff to move forward with an IIED claim against police officers, they have involved egregious behavior outside of an officer's discretionary authority." *Sheffield v. City of Sarasota*, No. 15-0319, 2015 WL 1346421, at *4 (M.D. Fla. Mar. 24, 2015) (citing *Tillman v. Orange County*, 519 F. App'x 632 (11th Cir. 2013) (per curiam) (holding that a plaintiff stated a claim for intentional infliction of emotional distress against officers who allegedly falsified charging documents to convict the plaintiff of a nonexistent crime); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991) (upholding a claim where police officers displayed grotesque photographs and videotape of plaintiff's family member's autopsy to non-police officers, allegedly for entertainment purposes)). Other courts have found that a plaintiff states a claim for intentional infliction of emotional distress where a police officer uses gratuitous force against a citizen who complies with the officer's commands. *See Holloway v. City of Orlando*, No. 15-0129, 2016 WL 4369958, at *8 (M.D. Fla. Aug. 16, 2016); *Williams v. City of Daytona Beach*, No. 04-1879, 2005 WL 1421293, at *9-10 (M.D. Fla. June 16, 2005).

Because the Court has found that the Officers had arguable probable cause to arrest Forrest for resisting an officer without violence, the Complaint reveals no "egregious behavior outside of an officer's discretionary authority" by Officer Jones.[5] Her conduct as alleged was neither extreme nor outrageous, and, in the absence of such conduct, the intentional infliction of emotional distress claim against her must be dismissed.

However, Given Forrest's allegations that Officer Plesher continually beat him despite his lack of resistance, the Court finds it plausible that Officer Plesher's conduct *was* outrageous. It is also plausible that Officer Plesher's conduct was reckless, because, accepting Forrest's allegations as true, Officer Plesher reasonably should have known that emotional distress would likely

---

[5] Forrest does not allege, for example, that Officer Jones was present for the alleged beating by Officer Plesher and that she failed to intervene despite having the ability to do so. *See, e.g.*, *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (per curiam); *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002); *Priester*, 208 F.3d at 924.

result when he used gratuitous force against the non-resistant Forrest. The Court can reasonably infer that Forrest satisfies the other elements of the claim, as well—that he suffered emotional distress and that the distress was severe. Accordingly, the Court concludes that the intentional infliction of emotional distress claim against Officer Plesher is sufficiently stated and that Officer Plesher is not entitled to statutory immunity on this claim. The motion to dismiss this claim is denied.

### C. *Claims against Chief Pustizzi*

Four of the Complaint's ten claims are brought against Chief Pustizzi as Officer Jones and Officer Plesher's supervisor: federal claims for false arrest and excessive force, and state claims for battery and negligent training and supervision. The Court addresses Chief Pustizzi's federal and state law arguments in turn.

#### 1. Federal Claims (Counts III and V)

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014). Instead, such liability "may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Smith v. LePage*, 834 F.3d 1285, 1298 (11th Cir. 2016). Personal participation is clearly not at issue here, as Chief Pustizzi did not inflict the alleged injuries himself. *See Hewett v. Jarrard*, 786 F.2d 1080, 1087 (11th Cir. 1986). "A causal connection can be established 'when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Smith*, 834 F.3d at 1298 (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005)). Alternatively, this connection can be established "when the history of widespread abuse puts the reasonable supervisor on notice of the need

to correct the alleged deprivation, and he fails to do so," or "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and internal quotations marks omitted). Regardless of the methods a plaintiff uses to establish the causal connection, the standard to establish the connection "is quite rigorous." *Smith*, 834 F.3d at 1298.

The Complaint's allegations in support of a causal connection as to the federal claims are as follows:

> 80. Officer Jones and Officer Plesher were at all times acting pursuant to the City of Coral Springs Police Department (through Police Chief Pustizzi's) policies, customs, and practices for arresting persons without probable cause, and the de facto policies, customs and practices of such arrests being sustained on the ability to imagine and write up pre-textual narratives. These de facto policies, customs, and practices were the moving force behind the deprivations of Plaintiff's constitutional rights, and resulted in conduct that was recklessly and deliberately indifferent Plaintiff's constitutional rights.
>
> 81. Police Chief Pustizzi and the CCSPD condoned and supported the practices of Officer Jones and Officer Plesher who falsely arrested individuals for alleged Resisting Officer – Obstruction without violence on or about January 17, 2016. Chief Pustizzi implemented a policy, custom, or practice of allowing CCSPD officers to make false arrests and to detain persons without probable cause by using the veneer of Resisting Officer – Obstruction without violence to paper over unconstitutional detentions. . . .
>
> 98. Additionally, Police Chief Pustizzi, acting in his official capacity as Police Chief of the City of Coral Springs Police Department, was aware of various lawsuits complaining that his officers used excessive force on other arrestees in circumstances not warranting the use of such force. These lawsuits demonstrate [a] pattern and practice of the CCSPD impermissibly training its officers to make arrests in circumstances where it is objectively apparent that no law been broken, as well as the inadequacy of training to refrain from using excessive force and from showing an utter disregard for human dignity. . . .
>
> 100. The de facto policies, customs, and practices of Police Chief Pustizzi, acting in his official capacity as Police Chief of the City of Coral Springs Police Department, were the moving force behind the excessive force and deprivation of constitutional rights suffered by Plaintiff and has not been remedied.

Compl. ¶¶ 80-81, 98, 100. These legal conclusions and other conclusory assertions are precisely the types of allegations that this Court has been directed to disregard under *Twombly* and *Iqbal*.

As Chief Pustizzi correctly contends, the only facts Forrest alleges in the Complaint are facts relating to his arrest. He alleges no facts which could plausibly demonstrate a causal connection between Chief Pustizzi's actions and the Officers' actions. Forrest's conclusory assertions that Chief Pustizzi implemented a policy, custom, or practice of permitting false arrests or uses of excessive force do not suffice to plausibly show such a causal connection exists. Therefore, Chief Pustizzi's motion to dismiss the federal claims is granted.

### 2. State Law Claims (Counts VI and VIII)

As to the state law claims for negligent training and supervision and for battery, Chief Pustizzi is correct that no "official capacity" claim against him as a governmental *employee* exists under Florida law. Fla. Stat. § 768.28 provides that the remedy for injury at the hands of a government official "***shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee***" unless the act or omission was committed by the official in bad faith or with malicious purpose. Fla. Stat. § 768.28(9)(a) (emphasis added). Chief Pustizzi argues that the state law claims should be dismissed against him under section 768.28 because he is not the Officers' employer. Forrest responds that Chief Pustizzi, "in his official capacity, is the de facto Department." Pl.'s Opp'n to Pustizzi Mot. at 10.

In making this argument, Forrest misunderstands the Police Department's capacity for suit. "Sheriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (citations and internal quotation marks omitted). In Florida, while county sheriff's offices can be subject to suit, *see generally, e.g.*, *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), "[w]here a [city] police department is an integral part of the city government as the vehicle through

18

which the city government fulfills its policing functions, it is not an entity subject to suit," *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995) (quoting *Eddy v. City of Miami*, 715 F. Supp. 1553, 1556 (S.D. Fla. 1989)); *see also Guzman v. City of Hialeah*, No. 15-23985, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("[T]he Court agrees that the City of Hialeah Police Department is not capable of being sued . . . .").

Forrest brings these claims against Chief Pustizzi in his official capacity as the head of the City of Coral Springs Police Department. *See* Compl. ¶ 105 ("Anthony Pustizzi, acting in his official capacity as Police Chief of the City of Coral Springs Police Department, had complete control and authority over all officers in the [Police Department]."); *id.* ¶ 120 ("Chief Pustizzi, acting in his official capacity as Chief of Police for the City of Coral Springs Police Department, is vicariously liable for the torts committed by agents and employees acting within the scope of their employment pursuant to Florida Statutes § 768.28."). But the City of Coral Springs Police Department is not an entity subject to suit under Florida law, so Chief Pustizzi is similarly not subject to suit in his official capacity as the "head" of an entity that is not itself subject to suit. The proper defendant for these claims would be the City of Coral Springs itself. Chief Pustizzi, as the Chief of Police, is not the "head" of the City of Coral Springs, so he is an improper official capacity defendant for claims that should have been brought against the City. As a result, the state law claims against Chief Pustizzi must be dismissed.[6]

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1) Defendant Anthony Pustizzi's Motion to Dismiss [ECF No. 14] is **GRANTED**. Counts III and V of the Plaintiff's Complaint [ECF No. 1] are **DISMISSED WITHOUT**

---

[6] To the extent these claims were brought against Chief Pustizzi in his *individual* capacity, the claims are dismissed, as well. Forrest has alleged no facts that plausibly suggest Chief Pustizzi acted outside the course and scope of his employment or that he acted in bad faith, with a malicious purpose, or wantonly and willfully.

19

(1) ... **PREJUDICE**, and Counts VI and VIII are **DISMISSED WITH PREJUDICE**;

(2) Defendant V. Jones's Motion to Dismiss [ECF No. 17] is **GRANTED**. Count I of the Complaint is **DISMISSED WITH PREJUDICE**, and Count X is **DISMISSED WITHOUT PREJUDICE**;

(3) Defendant A. Plesher's Motion to Dismiss [ECF No. 18] is **GRANTED IN PART**. Count II of the Complaint is **DISMISSED WITH PREJUDICE**. The motion is otherwise **DENIED**; and

(4) Defendant Plesher shall **ANSWER** the Complaint by **June 21, 2017**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of June, 2017.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE